WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Thelma T. Springer,            )
                               )
             Plaintiff,        )      No. CIV 07-0650-PHX-RCB
                               )
        vs.                    )           O R D E R
                               )
AARP Investment Program        )
Scudder Investments,           )
                               )
             Defendant.        )
_____)

    Currently pending before the court is a "Motion to Correct the

Record" by plaintiff *pro se* Thelma Springer (doc. 6). Also pending

is a "Motion to Dismiss" by defendant DWS Scudder Distributors,

Inc. (doc. 11), as well as a "Motion to Strike Plaintiff's 'Second

Reply to Defendant [sic] Motion to Dismiss'" (doc. 15) by

defendant.[1]

                        ***Background***

    On March 27, 2007, plaintiff Springer filed the present action

_____

[1]    Finding oral argument unnecessary, the court denies plaintiff's request
for same.

1  against "AARP, Investment Scudder Investments,"[2] alleging that it
2  has refused to pay the "cash value of . . . accounts" held in the
3  name of her now deceased father.  Co. (doc. 1) at 1 and 2.
4  Plaintiff claims that she has been trying to obtain these funds,
5  totaling $13,187.90, from defendant since December 7, 1999.  *Id.* at
6  3, ¶ 2 and at 1.  In attempting to "close" her father's account,
7  plaintiff alleges that defendant's whole attitude" and
8  "insensitivity" has caused she and her "family[3] . . . so much
9  emotional distress, words c[an] not explain."  *Id.* at 2.  Plaintiff
10 further alleges that defendant has refused to "abide by" or
11 "obey[]" unspecified "Rule[s] of Court[]" or "Laws of Court[.]" *Id.*
12 at 2.

13      According to defendant, plaintiff has supplied some, but not
14 all of the documentation necessary to release those funds.
15 Defendant further claims that despite trying to "accommodate"
16 plaintiff, including sending her explanatory letters, and spending
17 countless "hours on the phone with her[,]" plaintiff has not done
18 "what is necessary to obtain the funds."  Mot. (doc. 11) at 2.
19 Instead she filed the present lawsuit, which defendant is seeking
20 to have dismissed on several bases.

21                          ***Discussion***

22 ***I.  Motion to Correct Record***

23      Plaintiff filed a document entitled "Motion to Correct
24 Record" (doc. 6).  The precise nature of the relief which plaintiff
25

26      [2]      Defendant explains that it was incorrectly named as "AARP, Investment
   Program Scudder Investments[.]" Mot. (doc. 11) at 1.
27
      [3]      Ms. Springer is the only named plaintiff in this action; none of her
28 family members are named as plaintiffs.

1   is seeking by this motion is unclear, but evidently when she filed
2   it, she had not yet received a ruling on her motion to proceed *in*
3   *forma pauperis* ("IFP").  The court granted that motion on July 2,
4   2007 (doc. 7), however, and a copy of that order was also mailed to
5   plaintiff on that date (doc. 8).  Thus, because plaintiff has
6   received the relief which she appears to be seeking by this motion
7   to correct – a ruling on her IFP application –  the court denies
8   this motion as moot.

9   ***II.  Motion to Strike***

10      Plaintiff properly and timely filed her "Reply to Defendant's
11  Motion to Dismiss" (doc. 12).  Thereafter she filed a "Second Reply
12  to Defendant [sic] Motion to Dismiss" (doc. 14).  Defendant is
13  moving to strike that Second Reply as an authorized sur-reply (doc.
14  15).  Defendant's position is well-taken.

15      Despite her *pro se* status, plaintiff is nonetheless "bound by
16  the rules of procedure."  See Milsap v. U-Haul Truck Rental Co.,
17  2006 WL 3797731, at *16 (D.Ariz. 2006) (citing Ghazali v. Moran, 46
18  F.3d 52, 54 (9th Cir. 1995)).  Neither the Local Rules of Practice
19  for the District of Arizona, nor the Federal Rules of Civil
20  Procedure allow for sur-replies.  As this court has previously
21  indicated, it "sees no reason to extend briefing beyond that
22  contemplated in the federal rules and local rules governing civil
23  procedure."  Scottsdale Capital Advisors Corp. v. Renegade
24  Promotions, LLC, 2006 WL 2032805, at *5 n.2 (D.Ariz. 2006).
25  Therefore, the court will not consider plaintiff's Second Reply and
26  grants defendant's motion to strike in that regard (doc. 15).  See
27  id.

28  . . .

**III.  Motion to Dismiss**

     Defendant is moving to dismiss on four separate bases: (1) lack of subject matter jurisdiction; (2) statute of limitations; (3) failure to state a claim; and (4) improper service.  The court will consider the issue of subject matter jurisdiction first, because "[j]urisdiction is what [this court's] power rests upon." In re Mooney, 841 F.2d 1003, 1006 (9th Cir. 1988).

        ***A.  Subject Matter Jurisdiction***

            ***1. Citizenship***

     Evidently plaintiff is claiming subject matter jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. That statute provides in relevant part that district courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . *citizens* of different states[.]" 28 U.S.C. § 1332(a)(1) (West 2006) (emphasis added). Conspicuously absent from plaintiff's complaint are any allegations as to either her citizenship or that of the defendant corporation. Plaintiff simply alleges that she "reside[s] in Maricopa county[.]" Co. (doc. 1) at 1.  As to the defendant, she alleges merely that it "is a co[]rporation wh[ich] does business in Maricopa County, and the City of Phoenix, Arizona."  Id.  Plaintiff's allegations of residency are insufficient to establish her citizenship for purposes of section 1332, however.

     "On more than one occasion, this court has recently explicated "the simple allegations needed to establish a natural person's state of citizenship[ ] under § 1332(a)(1)[.]" Home Buyers Warranty Corp. v. Leighty, 2007 WL 4616687, at *3 (D.Ariz. 2007) (internal

quotation marks and citations omitted).  "More specifically:

> To be a citizen of a state, a natural person must first be a citizen of the United States.... *The natural person's state citizenship is then determined by her state of domicile, not her state of residence*. A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return.... *A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state*."

<u>Id.</u> (citations omitted) (emphasis added by court in <u>Western World</u> <u>Insurance Company v. Ramirez</u>, 2007 WL 1839594, at *1 (D.Ariz. 2007)).  "In <u>Western World</u>, [t]his court went on to explain that [t]he distinction between domicile and residence is an uncontroversial principle to which the Supreme Court has spoken long ago: [A]n averment that a party resided within the State or the district in which the suit was brought was not sufficient to support the jurisdiction, because in the common use of words a resident might not be a citizen, and therefore it was not stated expressly and beyond ambiguity that he was a citizen of the State, which was the fact on which the jurisdiction depended[.]" <u>Id.</u> (internal quotation marks and citations omitted).

　　　"Applying these well settled diversity pleading requirements to the present case," plaintiff Springer's failure to allege the state of her citizenship "is fatal because" as "the party asserting diversity jurisdiction[,]" she bears the burden of proof[.]" <u>See</u> <u>id.</u> (internal quotation marks and citation omitted). As this court has also previously indicated, it "cannot simply assume the state of citizenship" of an individual "based on where they reside or have resided." <u>Id.</u> (internal quotation marks and citation omitted).  In light of the foregoing, the court finds, as it must,

1  that plaintiff has not properly alleged her citizenship as required

2  to invoke section 1332.

3      "Corporations have dual citizenship for purposes of diversity

4  jurisdiction[.]" Id. (internal quotation marks and citation

5  omitted).   Pursuant to 28 U.S.C. § 1332(c)(1), "[a] corporation is

6  deemed to be a citizen of both the State in which it is

7  incorporated and of the State where it has its principal place of

8  business." Id. (internal quotation marks and citation omitted).

9  Assuming, although it is not alleged, that defendant's principal

10 place of business is in Arizona, and, again assuming, although it

11 is not alleged, that plaintiff is an Arizona citizen, that would

12 destroy diversity.   At this juncture, however, given the incomplete

13 allegations as to citizenship of both plaintiff and defendant, the

14 court is unable to ascertain whether there is complete diversity of

15 citizenship here.

16      If these jurisdictional defects could be cured by amendment,[4]

17 "ordinarily the court would allow such amendment[.]" See id.

18 (citation omitted).   As will be seen, however, even if plaintiff

19 could cure this particular defect, there are other obstacles to

20 this lawsuit which she cannot overcome.

21                    ***2.  Amount in Controversy***

22      Even if plaintiff had properly alleged diversity of

23 citizenship, defendant maintains that, nonetheless, it is entitled

24 to dismissal for lack of subject matter jurisdiction because the

25 amount in controversy does not exceed $75,000.00, another element

26

27      [4]      That is if, for example, plaintiff is a citizen of Arizona and
28 defendant is a citizen of a different state or states, then the diversity element
   of section 1332 would be met.

- 6 -

necessary to establish jurisdiction under section 1332.  In her
complaint plaintiff is seeking to recover $13,187.90, the face
value of her deceased father's account with defendant.
Additionally, she is seeking "treble damages" in the amount of
$39,563.70, $200,000.00 in damages for "emotional distress[,]" as
well as a "fine at the highest rate The Law allows[,]" and
unspecified "sanctions, fines, fees, and penalties the Law
allows[.]" Co. (doc. 1) at 3, ¶¶ 1; and 3-5.  These additional
damage claims are "patently meritless[,]" according to defendants.
Mot. (doc. 11) at 3.  Thus, plaintiff cannot establish the
$75,000.00 threshold amount in controversy.  Consequently,
defendant contends that the court must dismiss this action for lack
of subject matter jurisdiction.

     Courts "look no farther than the pleadings to determine the
amount in controversy unless 'from the face of the pleadings, it is
apparent, to a legal certainty, that the plaintiff cannot recover
the amount claimed.'" Kelly v. Fleetwood Enterprises, Inc., 377
F.3d 1034, 1037 (9th Cir. 2004) (quoting St. Paul Mercury Indemn.
Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845
(1938)).  "If it appear[s] to a legal certainty that the claim
cannot meet the statutory threshold, the suit should be dismissed
for lack of jurisdiction."  Id. (internal quotation marks and
citations omitted).  That legal certainty standard is met here.

     Plainly the $13,187.90 amount which plaintiff is seeking to
recover as the value of her father's account is insufficient to
meet the $75,000.00 statutory minimum.  Therefore, the court must
look at the other damages which plaintiff alleges to determine
whether she has satisfied section 1332's amount in controversy.

1   Although plaintiff is seeking $39,563.70 in "treble damages,"
2   nowhere does she provide a statutory basis for such damages.  Thus,
3   the court declines to take this amount into account in determining
4   the amount in controversy here.  <u>Contra</u> <u>In re High Fructose Corn</u>
5   <u>Syrup Antitrust Litigation</u>, 936 F.Supp. 530, 533 (C.D.Ill. 1996)
6   (treble damages could be included in determining whether plaintiff
7   met the amount in controversy where statute expressly mandates or
8   allows the payment of such damages).

9       For a different reason, the court will not include the
10   $200,000.00 which plaintiff is seeking to recover for "emotional
11   distress" in considering whether plaintiff has pled the $75,000.00
12   amount in controversy.  As will be more fully discussed below,
13   because plaintiff's complaint fails to state a claim for emotional
14   distress, she cannot rely on these particular damages to meet the
15   $75,000.00 threshold.

16       In light of the foregoing, only the $13,187.90 in damages is
17   properly considered in evaluating whether the complaint on its face
18   satisfies the amount in controversy.  That amount is well below the
19   necessary $75,000.00 statutory minimum.  Thus, the court finds that
20   the second element of jurisdiction under section 1332  has not been
21   shown on the face of plaintiff's complaint.  Because these
22   jurisdictional defects -- failure to properly allege the parties'
23   citizenship and failure to allege at least $75,000 in controversy
24   -- arguably are curable the court will address the other reasons
25   which defendant contends mandate dismissal of this complaint.

26   ***B.  Statute of Limitations***
27       In a diversity action, the law of the forum state governs the
28   applicable statute of limitations.  <u>Sonsteng v. Dominican Sisters</u>

- 8 -

1  of Ontario, Inc., 2007 WL 2984002, at *4 (D.Or. 2007) (citing

2  Bancorp Leasing and Fin. Corp. v. Agusta Aviation Corp., 813 F.2d

3  272, 274 (9th Cir. 1987)).  Accordingly, the court will look to

4  Arizona law to determine the governing statute of limitations here.

5  When it does that, the court readily agrees with defendant that

6  plaintiff's claims are time-barred.

7                    *1.  Breach of Contract*

8      Generously reading plaintiff's complaint as alleging breach of

9  contract, the court finds that since the statute of limitations has

10 run with respect to such a claim.  Arizona has a six year statute

11 of limitations for breach of written contract, which "includes all

12 suits brought to recover money without regard to any technical

13 distinction between debt and damages[.]" Arvizu v. AFSCME Local

14 Union 2384, 2005 WL 3434698, at *5 (D.Ariz. 2005) (internal

15 quotation marks and citation omitted); see also A.R.S. § 12-548

16 (West 2003).  Plaintiff's complaint can fairly be read as alleging

17 that as early as December 7, 1999, she began demanding that

18 defendant provide her with the funds in her deceased father's

19 account.  See Co. (doc. 1) at 1-2.  Thus, by her own admission,

20 defendant's first alleged breach occurred well beyond the six year

21 statute of limitations.

22     Plaintiff fares no better if her complaint is construed as

23 asserting claims for breach of implied or oral contracts.  Claims

24 of that type are governed by a three year statute of limitations.

25 See A.R.S. § 12-543; see also Biddle v. Mountain States Telephone

26 and Telegraph Co., 629 F.2d 571 (9th Cir. 1980) (under Arizona law,

27 three year statute of limitations governing oral contracts applied

28 to breach of contract action alleging breach of partly oral and

1   partly written contract).  Clearly then, with the alleged first

2   breach occurring on December 7, 1999, these claims are time barred

3   as well.

### 2.  Emotional Distress

5        "Arizona courts have concluded that the two-year limitations

6   period found in A.R.S. § 12-542 applies to IIED [intentional

7   infliction of emotional distress] claims."  St. George v. Home

8   Depot U.S.A., Inc., 2007 WL 604925, at *6 (D.Ariz. 2007) (citations

9   omitted).  Here, plaintiff's complaint does not include any

10  allegations of conduct by defendant within the two years prior to

11  March 27, 2007, the date she filed this action.  Indeed, the

12  correspondence attached to her complaint indicates that evidently

13  plaintiff last contacted defendant sometime prior to January 7,

14  2003, requesting release of the funds from her father's account.

15  See Co. (doc. 1), exh. 4 thereto.  Thus, to the extent plaintiff is

16  asserting a claim for IIED, this claim, too, is time-barred.

17  Accordingly, the court grants defendant's motion to dismiss this

18  action as barred by the applicable statute of limitations.

### C.  Failure to State a Claim

20       Even if plaintiff's IIED claim was not barred by the statute

21  of limitations, defendant would, nevertheless, be entitled to

22  dismissal on the grounds that she has failed to state a claim under

23  Fed. R. Civ. P. 12(b)(6).  An IIED claim, "requires proof of three

24  elements: first, the conduct of the defendant must be extreme and

25  outrageous; second, the defendant must either intend to cause

26  emotional distress or recklessly disregard the near certainty that

27  such distress will result from his conduct; and third, severe

28  emotional distress must indeed occur as a result of defendant's

conduct." <u>St. George</u>, 2007 WL 604925, at *4 (internal quotation marks and citations omitted).  "Under the first element, a plaintiff may recover for [IIED] only where the defendant's acts are so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  <u>Id.</u> (internal quotation marks and citations omitted).

In the present case, the allegations in plaintiff's complaint fall far short of alleging the type of conduct, just described, which is necessary to sustain an IIED cause of action.  Simply reciting, as plaintiff does, that she has suffered "much emotional distress" is not sufficient to allege a claim for IIED.  <u>See</u> Co. (doc. 1) at 2.  To be sure, plaintiff does allege that defendant was "insensitiv[e][,]" <u>id.</u>; but "[a]n IIED claim cannot arise out of conduct which merely hurts one's feelings." <u>St. George</u>, 2007 WL 604925, at *4 (internal quotation marks and citation omitted). Further, the exhibits attached to plaintiff's complaint belie her contentions that defendant "has ignored every attempt, every demand and every request made[]" to have her father's funds released or transferred to plaintiff.  Co. (doc. 1) at 2.  Moreover, even if defendant's conduct is deemed "unjustifiable, it does not necessarily rise to the level of atrocious and beyond all possible bounds of decency that would cause an average member of the community to believe it is outrageous." <u>See</u> <u>St. George</u>, 2007 WL 604925, at *4 (internal quotation marks and citations omitted). Given the demanding standard to which IIED claims are subjected, and given the relatively innocuous nature of the allegations in plaintiff's complaint, the court easily concludes that she has

1  failed to state a claim for IIED.  Thus, defendant's motion to

2  dismiss for failure to state a claim is granted to the extent

3  plaintiff's complaint can be read as attempting to assert a cause

4  of action for IIED.

5      ***D.  Improper Service***

6      Initially, defendant also urged dismissal asserting that it

7  was not properly served in accordance with Fed. R. Civ. P. 4, in

8  that it was served via regular mail, without the necessary "signed

9  and returned receipt."  <u>See</u> Mot. (doc. 11) at 7 (internal quotation

10 and citation omitted).  Given that improper service and the fact

11 that the 120 day time frame for filing of the complaint has

12 expired,[5] initially defendant took the position that the court must

13 dismiss this action.

14     Since the filing of this motion, however, on July 26, 2007,

15 defendant was served via "certified return receipt" mail.  Doc. 9.

16 Evidently because of that, defendant is no longer pursuing

17 dismissal based upon improper service, as it does not mention that

18 argument in its Reply.  In its Reply, however, defendant continues

19 to persist in arguing for dismissal on the three other grounds

20 discussed above.  Therefore, the court finds that defendant has

21 abandoned its argument that the complaint should be dismissed for

22 improper service, and necessarily denies defendant's motion to

23 dismiss on this basis.

24     For the reasons set forth above, IT IS ORDERED that:

25     (1) Plaintiff's "Motion to Correct the Record" (doc. 6) is

26

27     [5]     In accordance with Fed. R. Civ. P. 4(m), absent "good cause," a
plaintiff has 120 days after the complaint is filed in which to properly serve a
defendant.  Here, the complaint was filed on March 27, 2007.  Thus, plaintiff had

28 until July 25, 2007, by which to timely serve the complaint.

DENIED as moot;

    (2) Defendant's "Motion to Strike Plaintiff's 'Second Reply to Defendant [sic] Motion to Dismiss'" (doc. 15) is GRANTED; and

    (3) Defendant's "Motion to Dismiss" (doc. 11) is GRANTED in part and DENIED in part.  It is DENIED insofar as it is based upon lack of subject matter jurisdiction and improper service, but it is GRANTED based upon the statute of limitations and, with respect to the IIED claim because plaintiff has failed to sufficiently allege such a claim.

    DATED this 31st day of March, 2008.


                                              Robert C. Broomfield
                              Senior United States District Judge


Copies to counsel of record and plaintiff *pro se*

- 13 -